Mr. Earwood was convicted of distribution of heroin and fentanyl causing death after a jury trial. To establish that Mr. Earwood's distribution caused the death of the victim, Mr. Birch, the prosecution called medical examiner Dr. Francis Garrity. Dr. Garrity's testimony that Mr. Birch's fentanyl use was a but-for cause of his death was improper Rule 702 testimony and requires reversal under plain-air review. Further, the prosecution failed to prove beyond a reasonable doubt that Mr. Earwood's distribution of heroin and fentanyl was the but-for cause of Mr. Birch's death. Dr. Garrity's ultimate opinion, which is ultimately what we take issue with, that fentanyl was the but-for cause of the death, was improper. This ultimate opinion was not based upon scientific, technical, or specialized knowledge and did not reflect a reliable application of scientific principles or methods. Didn't the doctor have to take into consideration everything that was found in his body, all of the different drugs, and factor that in? Isn't that sort of the starting point of the medical expertise? Yes, and the doctor's testimony on what was found in Mr. Birch's body and the levels and what that meant is all proper expert testimony. The issue was with this final conclusion, which was not based upon his scientific knowledge or his expertise, because Dr. Garrity was incredibly forthcoming in saying, well, he had fentanyl levels in his system, they were therapeutic levels, but there was also several other comorbidities that could have caused his death. And the doctor's ultimate opinion, which is not based off of his analysis of the substances in Mr. Birch's body or his medical expertise, is, well, yes, but he hadn't died from those other issues yet, and it seems like he used right before, so I find that that's the cause of death. So he didn't rely on the toxicology report or the way that Birch was found in the hotel room or the physical examination that he conducted. The way I read it, I guess, and I want you to hopefully respond to this, is we think so? I think it's this, based on all the medical evidence, and I wouldn't know how, as a layperson, I wouldn't know how to read all that stuff, so I assume that he was taking his medical expertise into account in considering all of those things. I would say medical expertise as far as the levels of fentanyl in his body, but as far as the level of evidence, and not using his scientific background and his specialized expertise, that's the role of the jury, and it's unhelpful to the jury to say, well, my expertise is it could have been one of four things, but then I look, and he seems to have used drugs right before he died, so I'm going to find that that's the cause of death. But oftentimes doctors do that. They say, my best shot at this diagnosis, or what I think this is, is X, and we have to do further testing. Well, unfortunately, with a dead body, you really can't do that further testing, so I'm just wondering if the argument really eliminates anything that doesn't say to a degree of medical certainty this is the cause. No, and I think it's fact-specific to this case, in that if there had been, if the doctor in this case had said it's based off of the autopsy, or it's based off of the levels of fentanyl, that would be a different circumstance, but again, he was very straight up with the jury, in that if there hadn't been evidence of fentanyl use, I could have said it was a heart attack. I could have said it was cardiovascular. I could have said it was fatty liver disease. So at the point when a proposed expert is making determinations not based off of their scientific knowledge and the expertise that they're being called to testify as to, that's when it takes it out of proper Rule 702 evidence. This testimony seems a little sloppy to me. When I look at it, you know, when you look at how medical experts show up in courtrooms, you know, usually we go through the background and then we talk about, I'm going to ask you a series of questions and I want you to testify with a reasonable medical certainty as to what those opinions are, and then I'm going to come back and ask you what the basis for those opinions are. That never gets laid in here, so we don't really even know what the standard is that this doctor has actually applied. Now I presume that he is applying a reasonable medical certainty standard, right? But what he does do is he goes through and lists exactly the things he listed, so I won't restate them in my question, where he says these are all things that kill middle-aged men with a long history of drug and alcohol abuse, because that's what kills guys like this. They just drop over dead sometimes. Their livers explode if they get cirrhosis, right? But at this point we've got fatty liver disease, we've got, I wasn't going to list them, but we've got all those things going on. And so what I'm saying is that we can infer that the fentanyl is not merely a substantial contributing factor in the death, but is the but-for cause of the death, because he appears to collapse suddenly upon the ingestion of the fentanyl. Now we've had this case before with video, which is really great, because a guy injects fentanyl inside a room in which there is video, and I had that case and the guy just dropped dead. Well, you know, it's a pretty easy but-for case when you say he was standing there, walking around, looking like everything was okay, and he ingested it, and then all of a sudden he drops over. We think that's a but-for cause. We don't really have any evidence of that here other than the position of the body. Now, is that something that a physician can rely upon to make this conclusion and draw this conclusion to a medical certainty, in your opinion? I think it's potential in a case where you don't have, and I think like the Cooper case, which the government cites for the sufficiency argument, the idea where an individual doesn't have these other medical issues that could have caused the same respiratory edema that is caused by a fentanyl overdose, maybe, in those circumstances. I'm not sure if the courts even said medical expert is always required for a but-for testimony. They always put on a medical expert, but I think potentially there is a set of facts where it's, well, this person was perfectly healthy, they used and immediately died. We can say that's but-for. The problem is the specific facts in this case. We have an individual who had several other health issues that could have caused the same medical event that led to his death. It's not enough, and it's not based on scientific testimony to say, well, I can see it could be one of four things, but he used, so I'm just going to tell you that that's the cause of death. Well, I think you did say that it's most probable that the cause of death was the recent ingestion of fentanyl. Yes. Right? And you're saying that he can't even offer that opinion based on his medical expertise? If it's not based on his medical expertise, and our opinion is that it's not. The only thing the expert kind of said that went to his medical expertise, we said, well, it was rapid onset respiratory edema. But then the expert doesn't explain how he determined it was rapid onset. He doesn't explain how that might differ. Well, he kind of does. He talks about the frothy foam in the lungs. He said sometimes you see it outside the mouth, but at this point, it was present in the lungs. That's some evidence, I think. Slightly. But doesn't explain why that would not be present for a heart attack, or if it was fatty liver disease, and how it differentiates from that. And I would note, I think it potentially is indicative of how this testimony came in. There was no real, my recollection, testimony about reasonable degree of certainty. But it was also, at the conclusion, I believe, of direct examination of, this is about forecast, right? Yes. And then the expert's talking just about fentanyl. And then the prosecutor says, oh, and heroin too, right? Oh, yes, yes, yes. So it's not the very, as the court noted, the very technical, laid out opinion that's generally given in these cases. What if the doctor had eliminated some of the other sources? You've mentioned how he just doesn't really talk about the details of the other comorbidities. Would that be a way to then allow the medical doctor to rely on the physical surroundings to say, well, I don't think it's fatty liver disease because. I don't think it's X because. Yes. I think, absolutely, that would be proper expert testimony. And that you wouldn't be making a similar argument. Right. Correct. If there are no immediate questions, I'd reserve the remainder of my time for rebuttal. Thank you. Ms. Corcory. Good morning. Good morning. May it please the court. Dr. Garrity did not just opine. His ultimate opinion was not because Mr. Birch used fentanyl that that had to be the result or the cause of his death. His ultimate opinion was based on his medical expertise. Dr. Garrity went through a number of things that he considered when he reached that ultimate determination. That was the femoral blood test where fentanyl was found in the blood. That was the toxicology reports. That was the rapid onset of edema, the froth that was found in his trachea. He even noted that it was still present two days after Mr. Birch was found deceased. And he thought that that was significant because it showed how rapid the onset of the edema was. The abrasion above the eye, which suggested to him that Mr. Birch had just fallen over and collapsed. Also, the needle marks. So there was this physical examination of Mr. Birch. There was also this internal examination which included the laboratory results. And ultimately, that's how Dr. Garrity reached his opinion. Of course, timing is going to matter here. Dr. Garrity did testify that there can be other reasons which caused this rapid edema or this pulmonary edema. There are other medical issues that could possibly cause that. But in this case, after the physical and the internal review of Dr. Birch's body, Dr. Garrity then came to the conclusion that it must be fentanyl because we have the... Yes, your honor? I'm listening to what you're saying and I think you're exactly right because here's what's going on. There's no discussion of a differential diagnosis in this testimony. There's no discussion as to how we arrived at the conclusion that we arrived at it, which we would ordinarily expect to see in this kind of direct and cross-examination. What you're really hearing is evidence from which you could infer that a differential diagnosis was actually performed because the doctor lays out each of the comorbidities. He lays out the factors and how they may contribute to the death. He looks at the therapeutic non-fatal levels of fentanyl, but which are sufficient in the personal experience, I think you may have mentioned too, that people die from those sort of therapeutic levels because it just happens because people are not in perfect health. And he does talk about the sudden death that occurs here and that's kind of how he puts it all together. It might have been a lot cleaner to just lay it out and say I did this differential diagnosis, I hold this to a reasonable medical certainty, here's what the conclusion actually is. But it's got to be your argument that this is sufficient to at least give rise to a jury question. That the evidence was admissible and that it could have been fleshed out more on cross-examination, which would have probably led to a redirect examination. That didn't happen. This evidence just kind of came in the way that it did and it is sufficient, right? Yeah, absolutely. We would argue that it is sufficient and perhaps organization wasn't the best that it could have been. But at the end of the day, all of the considerations that Dr. Garrity had in front of him from his medical expertise, his personal review of Danny Burch, was laid out for the jury. The jury heard all of that. And they heard of all of these other medical anomalies that plagued Danny Burch, right? They heard that he was a long-time drug abuser. They heard about all of his other medical issues. And Dr. Garrity explained that. But in Barrage, you can be debilitated by multiple diseases, right? But the question really is, is it merely just a substantial contributing factor to the death or is it the but-for cause, right? And ultimately, I always thought that the Supreme Court, that Barrage really looks good if you're a person who's never tried medical cases, but as a guy who tried both malpractice cases and personal injury cases, I keep looking at it saying, this is a really, really tough standard. Because we're not looking for just a substantial contributing cause, which we would say, was it necessary as a substantial contributing factor in the death in an ordinary malpractice case? That's what we'd look for. Whereas here, we're saying, well, it's got to be a but-for cause. And that's somehow a higher cause. And this is right there on the edge for me, and I'm trying to figure out, well, is it really just a contributing factor or is it but-for cause? And I'm not quite sure I understand the distinction. So can you kind of help me out on that? Well, I mean, Dr. Garrity is, I mean, he did come out and say it is the but-for cause. But Dr. Garrity's testimony was that Danny Burch had been living with these anomalies for years, right? And he had been to the hospital and been hospitalized several months before his death. But by all accounts, based on Dr. Garrity's review of Danny Burch and his medical history and his medical records and his physical and internal review of him, he was doing relatively well. I mean, the record actually says Dr. Garrity testifies that he was doing relatively well up until that moment that he collapsed in the hotel bathroom. And so that is how Dr. Garrity came to the conclusion, based on, you know, the needle mark, the track marks in his arm, the contusion above his eye, that he had essentially ingested the substance that was found in the hotel and he had collapsed and fallen over. That coupled with the, you know, the rapid onset of edema to Dr. Garrity showed that whatever he ingested killed him. He had been doing relatively well. He ingests this controlled substance. He falls over dead. And when you look at, you know, when you look at Burrage, you know, Dr. Garrity doesn't testify that he, you know, might have died otherwise on that particular day from whatever. He doesn't specify what he could have died from. However... Although he does say that if there wasn't the fentanyl in his body, I would have said that he likely had a sudden onset heart attack. But I think that the case law says that he can say that, right? Right. It's got to be, you know, what is the tipping point here? And the tipping point was, yeah, sure, he's living with all of these medical issues and he, you know, ultimately could have died from them. But that's not what he died from on this day and time because he takes this fentanyl and within moments he falls over, hits his head, and again, when he looks at the internal review of Danny Burrage, he sees this, you know, this edema that is very rapid in forming. Dr. Garrity testified that there's a very short interim of time between the ingestion and the death and that's based on the evidence from the track marks and what's found in the hotel bathroom. I also think it's important to note that Dr. Garrity did not... He testified that he hadn't seen photos of the crime scene. The first time that he saw the photos of the crime scene was when he was actually in court testifying. He also testified in cross-examination that he wasn't entirely sure that fentanyl, that he knew that fentanyl was even found in the bathroom. And so what this suggests is this is not somebody, you know, like in Cooper where the medical examiner read all of the police reports, looked at the crime scene first, and kind of made this conclusion. Dr. Garrity is basing this strictly off of his review of, you know, his autopsy, his physical and internal review of Dr., or excuse me, of Mr. Birch. I'm trying to hone in on what appellant is arguing kind of slanted the testimony and whether or not that's this, you know, but for verbiage that was used at the very end of his direct examination. Ultimately, you know, it was up to the jury. The jury heard his testimony. The jury was able to use his expertise to support their ultimate conclusion that it was the fentanyl and heroin that killed Danny Birch. And so he was helpful. There isn't another, there isn't officers, there isn't lay people that can come in who would have been able to essentially assist the jury in understanding this edema or understanding the medical review that took place of Danny Birch. But that's not, maybe I'm misunderstanding the argument, but I don't think that the defense is saying that he couldn't come in and explain all of the toxicology, what was in his system, what's a therapeutic versus a fatal dose of fentanyl. I don't think that's the part that they're contesting, are they? It's taking that next step and basically saying what the jury could say, which is, well, yeah, he fell over in that moment, that that's not necessarily a medical conclusion. I'm not sure. I guess I'm not sure. I mean, they were honing in on this kind of but-for language, which is obviously the legal conclusion or legal language that's used here. But the defendant concedes that Dr. Gearty is an expert and that the bulk of his testimony is okay and it is proper. And so if it is getting to that point where he says, yep, it was the fentanyl, the fentanyl and the heroin is the but-for causation, he says that throughout his testimony without using that language. And so I think that's the confusion with the government, whether or not it's that final line that kind of slants the testimony for the jury. And we would argue that it does not. The jury had the entirety of the testimony by Dr. Gearty, where Dr. Gearty explains multiple times how the fentanyl would have caused him to collapse and die in that bathroom. And so we would argue that the testimony was proper. The trial court, I mean, it wasn't objected to at trial, right? So this is plain air. But it did not, there was nothing in it that would have swayed the jury one way or the other with respect to this kind of specific line that the appellant is arguing. And so we would argue that it is sufficient and it was proper. Thank you. So there is discussion of, is this a jury question? And our position is that all of this background testimony that Dr. Gearty gave about toxicology, about what he found through the autopsy, that is proper. Where our argument is, is just as to that final opinion testimony, telling the jury that the fentanyl was the but-for cause of Mr. Birch's death. Is your position that there's really no medical doctor could do, based on his testimony, there's just no way to make a medical based assessment of the but-for cause, is that kind of what you're saying? Yes, I think that's accurate. Is based off of his findings and what he's telling the jury up to that point, when he is, again, being very open in saying it could have been one of four things. To then say, well, yes, but also just based off of how he was found, it's a but-for cause. So then he became a fact finder sort of at that point? Yes, and that's when we're talking about the role of the jury in expert testimony. That's not the medical expert's role. It was the role of the jury to use that medical expert testimony and see if that actually established it. But the medical expert took on the role of the jury in saying, well, not really 100% based off of my medical findings, but just based off how he was found, it was fentanyl overdose. May I ask a question, just to follow up on that? Okay. Are you saying that if the physician had actually gone through and had stated, one, I believe that fatty liver syndrome is not the cause of death. Here's the reasons why. Two, I believe that the heart disease is not the cause of death. He did do a little bit about that, because he did talk about the stents, and they appeared to be functioning, and there appeared to be no organic injury to the heart, right? So he maybe ruled that one actually out on his testimony, the way you look at it. And then, I don't need to go through all of them, but assuming the doctor had done all those things, he could have said, on this differential diagnosis, the only thing left standing is sudden onset death as a result to acute intoxication arising out of heroin and fentanyl use, period. A doctor could have done that on this evidence. Absolutely, and I think it'd be an incredibly much more difficult case for the defense to say, if the doctor had gone through, yes, he has all these medical issues, but I determined it wasn't this for x reason, based off of my expertise. So really, what you're claiming is that the foundation for the asking of the last question, related to but-for causation, was lacking because there was a failure to explain the other medical conditions sufficient to give rise to the opinion. I think that is one way to articulate it. Yes, your honor, so. All right, thank you. Thank you. Thank you to both counsel for your arguments and your briefing. Both have been quite helpful. Thank you. Thank you.